IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : <br> : <br> Plaintiff, : <br> vs. : <br> : <br> ALL PROPERTY IN/UNDERLYING: : <br> E-GOLD ACCOUNT NUMBERS : <br> 352900, 2325383, AND 2449745 : <br> BULLION EXCHANGE CORPORATION : <br> : <br> Defendants *in rem*. : | Civil Action No:1:07cv01338 <br><br> Judge: Rosemary M. Collyer <br><br> **RECEIVED** <br><br> OCT 1 2 2007 <br><br> NANCY MAYER WHITTINGTON, CLERK <br> U.S. DISTRICT COURT |

**CLAIMANT THE BULLION EXCHANGE'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR JUDGMENT ON THE PLEADINGS**

**COMES NOW** the Defendant *in rem*, The Bullion Exchange, Corporation, pro se, and files this Motion to Dismiss or in the Alternative Judgment on the Pleadings, pursuant to Rules 12 and/or 56 of the Federal Rules of Civil Procedure, and in support thereof, shows to the Court as follows:

1. The plaintiff filed its verified complaint for forfeiture in rem to allegedly enforce the provisions of 18 U.S.C. § 981(a)(l)(A), which provides for the forfeiture of any property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 & 1960. However, the Complaint fails to establish the mandatory forfeiture requirements against The Bullion Exchange, and the Complaint is nothing more than a poor back door approach to put E-gold, Ltd. out of business.

2. 18 U.S.C. § 1960 provides that "[w]hoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both."

3. As provided in 31 U.S.C. § 5330, a "money transmitting business" is defined as having the following three essential elements:

> (1) Money transmitting business- the term "money transmitting business," means any business other than the United States Postal Service which -
> (A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an

informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system;
(B) is required to file reports under [31 USCS § 5313], and
(C) is not a depository institution (as defined in [31 USCS § 5313(g)]).

*See, United States v. Puche*, 350 F.3d 1137, 1141, n.2 (11th Cir. 2003) ("A money transmittal company is a non-bank financial institution that sells money orders, cashes checks, and sends money by wire outside the United States.")

4. Consequently, in order to state a claim upon which relief may be granted, the plaintiff must allege all three elements of a money transmitting business. Plaintiff has not, and cannot, accomplish that task. The Bullion Exchange buys and sells gold as a precious metal dealer, it does not transmit money, sell money orders, cash checks, etc.

5. Rule 12(c) of the Federal Rules of Civil Procedure provides as follows: Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

6. The actions of the Plaintiff have been directed at putting E-Gold out of business, and the subsequent forfeiture action constitutes an excessive fine imposed by the government, which has had the resulting effect of punishing the Defendant to the point the Defendant has ceased doing business. The forfeiture action was and is, punitive in nature, and constitutes an impermissible taking under the Fifth and Eighth Amendments to the United States Constitution.

7. At the time the Eighth Amendment was adopted, the Court noted, "the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." *Browning-Ferris Industries v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989). The Eighth Amendment itself, as were antecedents of the Clause in the Virginia Declaration of Rights and in the English Bill of Rights of 1689, "clearly was adopted with the particular intent of placing limits on the powers of the new government." *Id.*, at 265. Therefore, while leaving open the issues of whether the Clause has any applicability to civil penalties or to *qui tam* actions, the Court determined that "the Excessive Fines

Clause was intended to limit only those fines directly imposed by, and payable to, the government." *Id.*, at 266. The Court has held, however, that the excessive fines clause can be applied in civil forfeiture cases. *Austin v. United States*, 509 U.S. 602 (1993).[1]

The Supreme Court in *Austin*, further noted that for purposes of determining whether the clause of the *Federal Constitution's Eighth Amendment* prohibiting the imposition of excessive fines is applicable to federal statutory forfeitures of property to the United States, the question is whether such forfeitures impose punishment, not whether they are civil or criminal, for (1) the *Eighth Amendment's* text is not expressly limited to criminal cases; (2) the *Eighth Amendment's* history does not require such a limitation, where (a) there were no proposals for such a limitation when the *Eighth Amendment* was being framed, and (b) the final version of 10 of the English *Bill of Rights* of 1689, a predecessor of the *Eighth Amendment*, contains no such limitation; (3) the purpose of the *Eighth Amendment*, apart from its bail clause, was to limit the government's power to punish; (4) the excessive fines clause in particular limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense; and (5) the notion of punishment, as commonly understood, cuts across the division between civil and criminal law.

In *United States v. Halper, 490 U.S. 435, 446-449, 104 L. Ed. 2d 487, 109 S. Ct. 1892 (1989)*, the Court held that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *490 U.S. at 448*. And, if in fact the forfeiture is a punishment, the provisions of the Excessive Fines Clause of the Eighth Amendment are clearly applicable.

"The fictions of *in rem* forfeiture were developed primarily to expand the reach of the courts," *Republic Nat. Bank of Miami v. United States, 506 U.S. 80, 87, 121 L. Ed. 2d 474, 113 S. Ct. 554 (1992)*, which, particularly in admiralty proceedings, might have lacked *in personam* jurisdiction over the owner of the property. See also *Harmony v. United States, 43 U.S. 210, 2*

---

[1] In Austin the Court noted that the application of the excessive fines clause to civil forfeiture did not depend on whether it was a civil or criminal procedure, but rather on whether the forfeiture could be seen as punishment. The Court was apparently willing to consider any number of factors in making this evaluation; civil forfeiture was found to be at least partially intended as punishment, and thus limited by the clause, based on its common law roots, its focus on culpability, and various indications in the legislative histories of its more recent incarnations.

*HOW 210, 233, 11 L. Ed. 239 (1844).* As is discussed in the text, forfeiture proceedings historically have been understood as imposing punishment despite their *in rem* nature.

The *Austin* Court further noted that, "[i]n *United States v. United States Coin & Currency*, 401 U.S. 715, 28 L. Ed. 2d 434, 91 S. Ct. 1041 (1971)*, we reasoned that *19 U.S.C. § 1618*, which provides that the Secretary of the Treasury is to return the property of those who do not intend to violate the law, demonstrated Congress' intent "to impose a penalty only upon those who are significantly involved in a criminal enterprise." 401 U.S. at 721-722. Clearly, the Plaintiff has failed to establish that the Defendant was engaged in any illegal activity. On the contrary, the Defendant has sought out the governmental regulatory agency under which the definitions of money transmitter and MSB are covered, and has actively sought to be in full and complete compliance with all reporting and other requirements. Justice Scalia's[2] concurring opinion in the *Austin* case is of particular significance to this Court. In discussing Justice Scalia's opinion the majority noted, "Justice Scalia suggests that the sole measure of an *in rem* forfeiture's excessiveness is the relationship between the forfeited property and the offense. We do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture of Austin's property was excessive." The alleged violation of a state licensing statute, a misdemeanor by nature, which has not yet been proven to be applicable, does not warrant a forfeiture action in which the Plaintiff seizes $67,476.71 in addition to over one-half million dollars in a Delaware action. This is clearly an excessive fine.

Similar to the holding in *United States v. Bajakajian*, 524 U.S. 321, 141 L. Ed. 2d 314, 118 S. Ct. 2028 (1998), the defendant in that case was not a money launderer and was convicted only for a reporting offense. The Supreme Court found that for such a defendant, the forfeiture

---

[2] However the theory may be expressed, it seems to me that this taking of lawful property must be considered, in whole or in part, see *United States v. Halper*, 490 U.S. 435, 448, 104 L. Ed. 2d 487, 109 S. Ct. 1892 (1989), punitive. * Its purpose is not compensatory, to make someone whole for injury caused by unlawful use of the property. See *ibid*. Punishment is being imposed, [**2814] whether one quaintly considers its object to be the property itself, or more realistically regards its object to be the property's owner. This conclusion is supported by Blackstone's observation that even confiscation of a deodand, whose religious origins supposedly did not reflect any punitive motive but only expiation, see Law of Deodands, 34 Law Mag. 188, 189 (1845), came to be explained in part by reference to the owner as well as to the offending property. 1 W. [***508] Blackstone, Commentaries *301; accord, Law of Deodands, *supra*, at 190. Our cases have described statutory *in rem* forfeiture as "likely a product of the confluence and merger of the deodand tradition and the belief that the right to own property could be denied the wrongdoer." *Calero-Toledo, supra*, at 682.

of the entire amount of $357,144 carried overseas was grossly disproportionate to the offense, which was a failure to report that he was transporting more than $10,000 outside the United States. The violation cited by Plaintiff is essentially in the same category as that in the *Bajakajian* case, which clearly and succinctly held that the forfeiture was clearly and unquestionably, excessive and a violation of the defendants' Eighth Amendment rights and protections.

8. The Bullion Exchange has never been cited for illegal activity, or failure to follow procedures, rules or directives. In fact, The Bullion Exchange has assisted the FBI when an issue came up regarding a suspected transaction. The Bullion Exchange funds seized by the Plaintiff have no connection whatsoever with illegal activity, improper business conduct or constitute the fruits of tainted investments.

9. In *Kivanc v. Ramsey*, 407 F.Supp 2d 270 (D.D.C. 2006), the Court defined the standard applied to 12(c) motions: The standard applied to motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is essentially the same as that for motions to dismiss under Rule 12(b)(6) for failure to state a claim. See, *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987); *Transworld Products Co. v. Canteen Corp.*, 908 F. Supp. 1, 2 (D.D.C. 1995). On either motion, the Court may not rely on facts outside the pleadings and must construe the complaint in the light most favorable to the non-moving party. See *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir.1994). Granting judgment on the pleadings under Rule 12(c) or a motion to dismiss for failure to state a claim under Rule 12(b)(6) is warranted only if it appears beyond doubt, based on the allegations contained in the complaint, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). See also *Alicke v. MCI Communications Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997). If the Court does rely on matters outside the pleadings under either Rule 12(c) or Rule 12(b)(6), it must treat the motion as if it were one for summary judgment. See FED. R. CIV. P. 12(b),(c).

10. In this case, the Defendant's motion for judgment on the pleadings is warranted because the Government can prove no set of facts in support of its claim which would entitle the

Government to the forfeiture it seeks;  No matter how much evidence in support of its Verified Complaint the Government intends to present at trial, it simply cannot prove a prima facie violation of 18 U.S.C. § 1960.

11.     To be sure, as previously stated, 18 U.S.C. § 1960 provides that it is unlawful to operate an unlicensed money transmitting business. The term "money transmitting business" is defined in three parts in 31 U.S.C. § 5330. The Government has not, and cannot plead that any of those three parts describes or characterizes The Bullion Exchange's business. In fact, The Bullion Exchange requested directly from the Financial Crimes Enforcement Network (FinCEN), the federal agency empowered to define, and regulate the specific issue upon which the forfeiture action is predicated, a ruling as to whether or not it was required to file Currency Transaction Reports (FinCEN Form 104), and/or whether or not The Bullion Exchange was considered a money service business (MSB) and therefore required to obtain a license as a money transmitter. Numerous telephone contacts between FinCEN and The Bullion Exchange resulted in verbal assurances from FinCEN representatives that The Bullion Exchange did not fall within the definition of an MSB, nor was The Bullion Exchange a money transmitter.

In fact, the very agency which has jurisdiction over this issue (FinCEN), stated in a letter of November 22, 2006, approximately five months after The Bullion Exchange submitted a written request for an administrative ruling on the issue of MSB and money transmitter status, FinCEN representatives specifically stated, "[a]ccordingly, we are interpreting your letter as a request for an administrative ruling as to whether Bullion Exchange is a money service business required to register with FinCEN and whether it must comply with all Bank Secrecy Act programmatic, recording keeping . . . However, given that the representations set forth in your request do not contain sufficient information for us to issue an administrative ruling, it will be necessary for you to supply additional information amounting to a more complete statement of material facts in order to obtain a ruling."

12.     First, under § 5330(1)(A), The Bullion Exchange does not provide check cashing, currency exchange, or money transmitting services, and it neither issues nor redeems money orders, travelers checks or any other similar instruments. The Bullion Exchange is **not** "a non-bank financial institution that sells money orders, cashes checks, and sends money by wire

outside the United States," and the Government's Verified Complaint does not allege otherwise; *see, Puche, supra*. As stated by the Court in *United States v. 47 10-Ounce Gold Bars, et al*, 2005 U.S. Dist. LEXIS 2906, 16 (D. Or. 2005), "[m]any businesses receive and transmit funds as payment as a part of their business." Not all of those businesses, however, are in the business of transmitting money.

Second, under § 5330(1)(B), The Bullion Exchange is not required to file reports under 31 USCS § 5313, and the Government's Verified Complaint does not allege otherwise. § 5313 provides as follows: "When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes."

13. Additionally, The Bullion Exchange is not a "domestic financial institution" as defined by 31 U.S.C. § 5312(a)(2) and the Government's Verified Complaint does not allege otherwise. In fact, the Verified Complaint ignores that essential element altogether. (The Verified Complaint similarly ignores the third and final essential element of "money transmitting business," i.e. whether The Bullion Exchange is a depository institution as defined in 31 USCS § 5313(g)).

14. Although The Bullion Exchange has been openly and notoriously operating in the United States for several years, and complied with requests for investigative help with federal agencies, the Department of Treasury has never required The Bullion Exchange to file reports of any kind on any of its transactions. Indeed, § 5313 is only applicable to cash and cash equivalent transactions. Since The Bullion Exchange cannot be held to be a money transmitting business under 31 USC Section 5330 and therefore cannot be held to be an unlicensed money transmitting business under 18 USC Section 1960, likewise the provisions of Section 5313 are inapplicable.

15. The Bullion Exchange has complied with all efforts central to this discussion because they weigh so heavily on the Government's failure to artfully plead a *prima facie* violation of 18 U.S.C. § 1960 in its Verified Complaint for Forfeiture. The Government has not only known of The Bullion Exchange's business since its inception, but the Government has been requesting crucial information from them since that time. However, at no time during its history has any Government office, or agent, informed The Bullion Exchange that it was either a) operating as an unlicensed money transmitting business, b) neglecting to file § 5313 reports, or c) acting in any other illegal or unlawful way. Now, in an effort to regulate The Bullion Exchange's business activities, the Government has moved this Court for the forfeiture of the *res* of The Bullion Exchange's accounts with E-Gold, which coincidentally happens to be the party who 98% of the complaint is directed. The Government's efforts are transparent and not well taken.

16. The burden of proof is on the government to establish, by a preponderance of the evidence, that the property is subject to forfeiture. *18 U.S.C. § 983(c)(1)*. The Civil Asset Forfeiture Reform Act of 2000 "transferred the burden of proof from the claimant to the government and required the government to establish forfeiture by a preponderance of the evidence rather than by the lower probable cause standard." *United States v. $80,180.00 in U.S. Currency, 303 F.3d 1182, 1184 (9th. Cir. 2002)*. When a party has the burden of proof on any claim by a preponderance of the evidence, the finder of fact must be persuaded by the evidence that the claim is more probably true than not true. In *United States v. 47 10-Ounce Gold Bars, et al*, 2005 U.S. Dist. LEXIS 2906, 16 (D. Or. 2005) the Court noted that Section 983 provides that, "If the Government's theory of forfeiture is that the property . . . was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." The Government has failed to meet that burden in this matter, and cannot meet that burden due to the fact that The Bullion Exchange operates within the confines of the law, and has operated under the guidance of FinCEN statements.

17. The complaint lacks specificity for pleading, lacks adequate notice provision to

allow Defendant to respond in an appropriate fashion, and has alleged that The Bullion Exchange is engaged in an illegal unlicensed money transmitting business. Regardless of whether this Court views this motion as one for judgment on the pleadings or one for summary judgment pursuant to Rule 12(c) or Rule 56, respectively, of the Federal Rules of Civil Procedure, The Bullion Exchange is entitled to the dismissal of this action with prejudice.

18.     The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. *Laningham v. United States Navy*, 259 U.S. App. D.C. 115, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50. To defeat summary judgment, a plaintiff must have more than "a scintilla of evidence to support his claims." *Freedman v. MCI Telecommunications Corp.*, 347 U.S. App. D.C. 112, 255 F.3d 840, 845 (D.C. Cir. 2001).

WHEREFORE, for the foregoing reasons, the Defendant, The Bullion Exchange, Incorporated respectfully requests that this Court enter a judgment on the pleadings or, in the alternative, summary judgment.

Respectfully submitted,

The Bullion Exchange, Inc.

_____
Don Neve, President
1727 Major Street
Salt Lake City, UT (Utah) 84115
(801) 488-4653