UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,            )<br>Plaintiff,            )<br>                                                                )<br>v.            )<br>                                                                )<br>ALL PROPERTY IN/UNDERLYING            )<br>E-GOLD ACCOUNT NUMBERS:            )<br>352900, 2325383 AND 2449745,            )<br>Defendant.            )<br>_____)  | Civil Action No. 07-01338 (RMC) |

**PLAINTIFF'S OPPOSITION TO CLAMANT'S MOTION TO DISMISS**

Plaintiff, the United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully opposes "Claimant The Bullion Exchange's Motion to Dismiss or in the Alternative for Judgment on the Pleadings."

At the outset, claimant's motion should be denied because it purports to have been filed by Don Neve, *pro se*. See Claimant's Motion at 1. In the Verified Statement of Interest that Mr. Neve submitted in his capacity as president of the Bullion Exchange, Mr. Neve asserts that The Bullion Exchange is a Utah corporation. See Dkt. 3. Corporations cannot appear in this Court, *pro se*. See Flynn v. Thibodeaux Masonry, Inc., 311 F. Supp.2d 30, 37 (D.D.C. 2004) (citing Rowland v. Calif. Dept. of Corrections, 506 U.S. 194, 202 (1993)); Jacobs v. Patent Enforcement Fund, Inc., 230 F.3d 565 (2d Cir. 2000) (corporation not properly before district court where its president sought to appear *pro se* on its behalf). Mr. Neve's verified claim suffices to establish the corporation's statutory standing under Supplemental Rule G and 18 U.S.C. 983(a)(4)(A), but neither his company's *pro se* Answer, nor its *pro se* Motion to Dismiss, is properly submitted.

Even if claimant's Answer and its Motion to Dismiss were not technically deficient, the Motion to Dismiss lacks substance, too. Claimant asserts that The Bullion Exchange buys and

sells gold "as a precious metal dealer," but that it does not transmit money, sell money orders, cash checks, or otherwise act as a money transmitter.[1]  Claimant's Motion ¶ 4.  But, as the government's Complaint points out, claimant operates as an out-exchanger in the e-gold system.  Complaint Affidavit ¶¶ 10, 12, 14, 15, 53-61.  In paragraph 5 of the Verified Complaint, the government explains that the defendant property previously existed as a value assigned to one or more accounts maintained by the e-gold system which operates as a system for transferring funds through the Internet.  In paragraphs 26 through 30, the government explained how the e-gold operation (of which claimant, as an in-exchanger and an out-exchanger is a part) functions as an unlicensed money transmitting business.

In Count IV of the Verified Complaint, the government indicates that the defendant property (which was seized from the unlicensed e-gold operation, is subject to forfeiture as property involved in that unlicensed money transmission operation.

The government also explained how some of those using the e-gold system, those operating the system, and so-called "digital currency exchangers" conspire to ensure that funds move untraceably or, if traceable to criminal activity, nevertheless continue to move irretrievably through (and out of) the e-gold system.  Id. ¶¶ 11-12, 22-24.  The government also explained how

---

[1] Mr. Neve explains that The Bullion Exchange acts as a precious metals dealer.  As such, he also appears to assert, he is not a "domestic financial institution."  See Claimant's Motion ¶13.  But, in fact, precious metals dealers are financial institutions.  Compare 31 C.F.R. § 103.11(n) (defining "financial institution" to include "money services business[es]" (MSBs) that are described in subsection (uu)); 31 C.F.R. § 103.11(uu) (including "currency dealer or exchanger" and "money transmitter[s]" as MSBs); and 31 C.F.R. § 103.20 (MSB's requirement to file suspicious activity reports); and 31 C.F.R. § 103.140(a) (anti-money laundering program for dealers in precious metals, precious stones, or jewels).  Even precious metals dealers are required to deploy anti-money laundering initiatives.  Mr. Neves's apparent argument, that as a precious metals dealer his company had no legal obligation to investigate money-laundering occurring within the e-gold system, falls flat.

the e-gold system functions largely like an internet-based hawala. Individuals and entities agree to provide their own real money in exchange for another's e-gold, confident that their e-gold can be transferred to others to fund legal and illegal enterprises and, thereafter, profitably "redeemed" by those others, using so-called "exchangers," for real money.[2]  Id.  The government explained that e-gold system users fund the system in order to be able to receive and send money anonymously, instantaneously and irreversibly.  Id. ¶ 22.  The defendant property is alleged to have been property involved in the e-gold operation's money laundering activity, and therefore subject to forfeiture on these additional bases as well.  See Counts I-III.

Claimant does not appear to deny that the e-gold operation facilitates the movement of funds using the Internet, and it does not appear to deny that the defendant property was seized from the e-gold system.  Claimant's apparent argument is that its operations, and the defendant property that in this case was seized from the e-gold operation, should be distinguished from the e-gold operation.  That argument is both curious, and fact-intensive.  But, fact disputes are not properly determinable alongside Rule 12's early dismissal motions.  See Davis v. Monroe City Bd. of Educ., 526 U.S. 629, 633 (1999); Fed. R. Civ. P. 52(a).

---

[2] A "hawala" operates as a remittance system that operates outside of, or parallel to, traditional banking or financial systems.  According to Interpol, it developed in India, before the introduction of western banking practices, and currently functions as a major remittance system around the world.  Hawala systems often are referred to as "underground banking," although they may operate and advertise openly.  See "The Hawala Alternative Remittance System and its Role in Money Laundering," Interpol General Secretariat, (Lyon, France) January 2000 (website: http://www.interpol.int/Public/FinancialCrime/MoneyLaundering/hawala/default.asp ).  See, e.g., United States v. Dinero Express, 313 F.3d 803, 806-07 (2d Cir. 2002) (international money laundering established through a money remittance hawala-style operation, even though no single step involved the movement of money across the border, because money sent through money remitter in process that began with sum of money in one country and ended with related sum in another country; transfer established though a transaction serving to offset debits and credits).

Lastly, claimant provides an lengthy discussion of the excessive fines clause of the Constitution. But, the question of an unconstitutional excessive fine presupposes that a forfeiture is proper, properly asserting instead that a specific amount of forfeiture is too great. Claimant's argument, if properly made, should challenge not whether, but how much forfeiture should occur. An excessive fine contention, meritorious or not, argues only in mitigation of forfeiture, not in opposition to it. Thus, claimants's 8th amendment analysis logically either concedes that forfeiture is proper, or it is premature.[3]

WHEREFORE, for the foregoing reasons, the government respectfully requests that the Court deny claimant's Motion to Dismiss.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

/s/
_____
WILLIAM R. COWDEN (DC Bar #426301)
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-0258
william.cowden@usdoj.gov

---

[3] Nor does claimant's argument establish that full forfeiture is an excessive fine in this case. See United States v. Ahmad, 213 F.3d 805, 816 (4th Cir.) (burden is on the "party challenging the constitutionality of the forfeiture, to demonstrate its excessiveness."), cert. denied, 531 U.S. 1014 (2000).

CERTIFICATE OF SERVICE

      I hereby certify that on this 21st day of December 2007, I caused a true and correct copy of the foregoing to be mailed, via postage paid first class mail, to:

Don Neve, President
The Bullion Exchange, Inc.
1727 Major Street
Salt Lake City, UT  84115

President of Claimant The Bullion Exchange, Inc.

                                          /s/
                                          William R. Cowden
                                          Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>　　　　　Plaintiff,　　　　　)<br>　　　　　　　　　　　　　　　)<br>　　v.　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　)<br>ALL PROPERTY IN/UNDERLYING )<br>E-GOLD ACCOUNT NUMBERS:　　)<br>352900, 2325383 AND 2449745, )<br>　　　　　Defendant .　　　　)<br>　　　　　　　　　　　　　　　) | Civil Action No. 07-01338 (RMC) |

**O R D E R**

UPON CONSIDERATION of claimant's Motion to Dismiss, the Opposition thereto and the entire record herein, it is this _____ day of _____ 2008, hereby

ORDERED that claimant's Motion is DENIED.

_____
ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE

ECF service to counsel of record

cc:　　Don Neve, President
　　　　The Bullion Exchange, Inc.
　　　　1727 Major Street
　　　　Salt Lake City, UT  84115